

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

**TRISH M. BROWN**
CHIEF JUDGE

1001 SW FIFTH AVENUE, #700
PORTLAND, OREGON 97204
(503) 326-1592

STEPHEN A. RAHER
LAW CLERK

SUZANNE M. MARX
JUDICIAL ASSISTANT

April 30, 2018

Carla G. McClurg
Office of the U.S. Trustee
620 SW Main St. #213
Portland, OR 97205

Jesse A.P. Baker
Aldrige Pite, LLP
P.O. Box 17933
San Deigo, CA 92177

Troy D. Nixon
620 SW Main St. #616
Portland, OR 97205

Kirk W. Knutson
1795 Capitol St. NW
Salem, OR 97301

**VIA CM/ECF ONLY**

Re:  *In re Fite, LLC*, Case No. 18-30038-tmb11

Dear Counsel:

This matter came before the court on the Motion for an Order Dismissing Case with Prejudice (Permanent Bar to Refiling) (the "<u>Motion</u>," ECF No. 61) filed by the United States Trustee on March 22, 2018. The court held an evidentiary hearing on the Motion on April 23, 2018. The U.S. Trustee was represented at the hearing by Carla G. McClurg and creditor Bank of New York Mellon (as securitization trustee) was represented by Jesse A.P. Baker. Both Kirk W. Knutson and Troy D. Nixon appeared on behalf of Debtor.[1] Debtor's owner and manager, Tracey Baron, did not attend the hearing.

At the conclusion of the April 23 hearing I announced my intent to dismiss the above-referenced case. I write today to provide the basis for my decision.

---

[1] The confusing status of Debtor's legal representation is one of many unusual aspects of this case. The petition was filed and signed by Kirk W. Knutson, of the Law Offices of Camacho & Knutson. Mr. Knutson's law firm filed an application for employment on January 15, 2018 (ECF No. 13). The court approved that employment application on February 15, 2018 (ECF No. 29), but less than two hours later, Mr. Knutson's firm moved to withdraw as counsel (ECF No. 31). On April 23, 2018, less than one hour before the start of the hearing on the U.S. Trustee's Motion, attorney Troy D. Nixon filed an application for employment, indicating that Debtor had paid him a $15,000 retainer via an unauthorized post-petition disbursement (ECF No. 80). The court has not acted on Mr. Nixon's employment application or Mr. Knutson's motion to withdraw. Messrs. Knutson and Nixon were both present at and participated in the April 23 hearing, and at this time the court makes no determination concerning who is Debtor's counsel of record.

**Facts**

The facts of this case involve a cluster of entities that Tracey Baron uses to conduct his real estate dealings, and which have filed bankruptcy petitions in recent months. Debtor was formed on January 3, 2018, and is the successor-by-merger to two Oregon limited liability companies, Turning Leaf Homes IV, LLC and Turning Leaf Homes V, LLC (collectively, the "Turning Leaf Debtors"). Hrg. Exhs. 14 and 15. Debtor's chief executive officer and sole owner is Tracey Baron. Stmt. of Financial Affairs (ECF No. 15), line 28. Mr. Baron was also the manager and sole owner of the two Turning Leaf Debtors. Hrg. Exh. 10, ¶¶ 13 and 35.

The two Turning Leaf Debtors were not strangers to bankruptcy. Turning Leaf Homes IV, LLC filed a voluntary chapter 11 petition on February 6, 2017 (Case No. 17-30353-tmb11). Turning Leaf Homes V, LLC filed a voluntary chapter 11 petition on May 23, 2017 (Case No. 17-31944-tmb11). On August 25, 2017, the U.S. Trustee moved to dismiss both of the Turning Leaf Debtors' cases, citing alleged mismanagement. After holding an evidentiary hearing on October 24, 2017, the court dismissed the two cases, based on findings of unauthorized transfers of cash, failure to file accurate monthly operating reports, and failure to deposit post-petition income in an approved bank account. In delivering this ruling, I stopped short of finding that Mr. Baron acted in bad faith, but did note that Mr. Baron's attempts to blame others for his own mistakes were particularly unpersuasive.

In addition to the Turning Leaf Debtors, there are two other affiliates of Mr. Baron that filed recent cases. While they are not directly relevant to the present Motion, these cases deserve brief mention because they provide additional support for the U.S. Trustee's argument that Mr. Baron has enough bankruptcy experience that he knew or should have known that his management of Debtor did not comply with the fiduciary obligations imposed on chapter 11 debtors-in-possession. Crimson Investment Group, LLC[2] filed a voluntary chapter 11 petition on July 14, 2016 (Case No. 16-32747-tmb11). That debtor filed several plans of reorganization, but failed to win confirmation. Ultimately, on February 9, 2018, the court dismissed the case upon finding that Mr. Baron had grossly mismanaged the debtor's estate. *In re Crimson Investments, LLC*, Case No. 16-32747-tmb11, Letter Opinion dated Jan. 24, 2018 (ECF No. 204). Another entity, RenX Group II, LLC,[3] filed a voluntary chapter 11 petition on August 22, 2017 (Case No. 17-33139-tmb11). That case was dismissed on November 22, 2017, after the debtor failed to file monthly operating reports for August and September 2017.[4] Hrg. Exh. 13.

Mr. Baron also controls at least one entity that has not filed a bankruptcy petition: Turning Leaf Management, Inc. ("TLM"). Mr. Baron and his wife collectively own 100% of TLM. Hrg. Exh. 10, ¶ 11. Although TLM appears to conduct some business activities on behalf of Mr. Baron's various LLCs, it also serves as a source of funding for Mr. Baron's personal lifestyle: he testified that he does not have a personal bank account, and that he pays his personal expenses from TLM's assets. Hrg. Exh. 38, at 24:7-9 and 28:6-8.

---

[2] Crimson Investment Group, LLC was wholly owned by Tracey Baron until shortly before the petition date, when Mr. Baron apparently transferred his ownership interest to another of his entities, Turning Leaf Homes, LLC. *See* Case No. 16-32747-tmb11, SOFA (ECF No. 1), at lines 28-29. Mr. Baron remained the manager of Crimson Investment Group throughout its chapter 11 case.

[3] Mr. Baron owned a 90% interest in RenX Group II, LLC at the time of its bankruptcy petition. Case No. 17-33139-tmb11, SOFA (ECF No. 16), at line 28.

[4] RenX Group II appealed the order of dismissal, but on April 27, 2018, the Bankruptcy Appellate Panel dismissed the appeal for lack of prosecution. *See* Ninth Circuit BAP Case No. 17-1359, Order Dismissing Appeal (ECF No. 8).

The Turning Leaf Debtors' cases were dismissed at the end of October 2017. Hrg. Exhs. 11 and 12. At the time of dismissal, the two Turning Leaf Debtors held bank accounts with a combined balance of approximately $104,500. Hrg. Exh. 32, at 5; Hrg. Exh. 33, at 1. On November 2, 2017, a total of $104,528.96 was transferred from the Turning Leaf Debtors' accounts into TLM's bank account (the "November Transfers"). Hrg. Exh. 30, at 16. The November Transfers were recorded in the financial records of the Turning Leaf Debtors as loans, which created corresponding accounts receivable due from TLM (the "TLM Receivable"). Hrg. Exh. 18, at 1; Hrg. Exh. 20, at 4. When the Turning Leaf Debtors merged, the Debtor (as the surviving entity) became the owner of the TLM Receivable.[5] Hrg. Exh. 17, at 1.

On January 5, 2018, two days after Debtor was formed, it commenced this case by filing a voluntary chapter 11 petition. On February 13, 2018, the court held a case management conference, at which the court and the U.S. Trustee both expressed concern about numerous inconsistencies in the Debtor's bankruptcy schedules and statement of financial affairs ("SOFA"). Following the case management hearing, the court entered an order (the "Deadline Order," ECF No. 33), requiring that Debtor take certain steps to address irregularities in the case. Among other things, the Deadline Order required that Debtor: (1) account for all post-petition rent and deposit such funds in Debtor's bank account, (2) file amended schedules and an amended SOFA no later than March 13, 2018, and (3) attach redacted bank statements to all monthly operating reports filed pursuant to Federal Rule of Bankruptcy Procedure 2015(a) and Local Bankruptcy Rule 2015-1(b).

Debtor failed to comply with several requirements of the Deadline Order. The court held a continued case management hearing on March 20, 2018. Mr. Baron was present at the hearing, during which the U.S. Trustee's trial attorney announced her intent to seek dismissal of the case. The Motion was filed on March 22. Creditor Bank of New York Melon joined in support of the motion on April 16 (ECF No. 74).

**Jurisdiction and Legal Standard**
This court has jurisdiction to decide the Motion under 28 U.S.C. §§ 1334 and 157(b)(2)(A). Dismissal of this case is governed by § 1112 of the Bankruptcy Code. Under § 1112, the court must conduct a two-step inquiry. First, I must determine whether cause exists for conversion or dismissal. Second, if cause is present, I must apply a balancing test to choose between conversion or dismissal based upon the best interests of creditors and the estate. *Woods & Erickson LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 730 (9th Cir. BAP 2008).

**Analysis**
Section 1112(b)(4) provides a non-exclusive list of actions or omissions that constitute "cause" for dismissal. The U.S. Trustee seeks dismissal based on three enumerated types of cause: gross mismanagement of the estate, violation of a court order, and failure to timely satisfy reporting or filing requirements.[6] Creditor Bank of New York Melon joins in these arguments, and also urges dismissal based for an additional, unenumerated, type of cause: bad-faith filing of the petition. I will address each of these allegations in turn.

---

[5] By the time of the merger, the TLM Receivable had grown to $136,515.76. The reason for this increase is not entirely clear, however, U.S. Trustee employee Tammy Combs testified that based on her review of the Debtor's records, the increase is most likely attributable to rents that were owed to the Turning Leaf Debtors, but which were collected and retained by TLM.

[6] The U.S. Trustee's memorandum in support of the Motion alleges a fourth instance of cause (failure to respond to U.S. Trustee requests), but the U.S. Trustee's trial attorney withdrew this argument at the April 23 hearing.

*Gross Mismanagement*

Section 1107 of the Bankruptcy Code takes the significant approach of allowing most chapter 11 debtors to remain in possession of their assets. In return for this considerable benefit, the debtor's managers are subject to fiduciary duties. "The debtor in possession is not free to deal with estate property as he chooses, but holds it in trust for the benefit of creditors, standing in the shoes of a trustee in every way." *U.S. v. Stanmock, Inc. (In re Stanmock, Inc.)*, 103 B.R. 228, 233 (9th Cir. BAP 1989) (citation and internal quotation marks omitted). Failure to uphold the responsibilities imposed on a debtor-in-possession may constitute cause for dismissal, although the acts or omissions in question must occur post petition. 11 U.S.C. § 1112(b)(4)(B); *see also* 7 Alan Resnick & Henry Sommer, *Collier on Bankruptcy* (16th ed. rev. 2018) ¶ 1112.04[6][b] [hereinafter "Collier"] (gross mismanagement of the estate focuses on the bankruptcy estate, not the prepetition affairs of the debtor).

Here, the U.S. Trustee has proven numerous instances of gross mismanagement on the part of Mr. Baron and his chief financial officer, Robert Hausner. First among these acts of mismanagement is Mr. Baron's approach to the TLM Receivable. As an owner of both TLM (the obligor on the TLM Receivable) and Debtor (the obligee), Mr. Baron is personally conflicted when it comes to asserting the bankruptcy estate's rights regarding collection of this asset. Rather than approaching this difficult situation with the utmost care and diligence, Mr. Baron began by obfuscating and equivocating, before he changed course and took unilateral and unauthorized steps to protect his own interests at the expense of the estate.

On February 22, 2018, Mr. Baron personally filed the Debtor's first monthly operating report, covering the month of January 2018. ECF No. 40. That report includes the TLM Receivable as part of $157,838 listed under the category of "other assets." *Id.* at 5; Hrg. Exh. 38, at 43:23 – 44:5. Then, on March 16, 2018, the U.S. Trustee conducted a continued meeting of creditors. *See generally* Hrg. Exh. 38. Despite the fact that the TLM Receivable had been listed as an asset on Debtor's internal financial statements *and* the operating report filed with the court, Mr. Baron refused to acknowledge that his entity, TLM, owed money to the Debtor. Under questioning by the U.S. Trustee's trial attorney, Mr. Baron stated the TLM Receivable "will be wiped out" because it is not a "real" receivable. *Id.*, at 22:12-14. When asked why the TLM Receivable was not listed on Debtor's schedule A/B, Mr. Baron responded "I don't believe that *we* owe it." *Id.* at 30:11-17 (emphasis added). When directly asked about his conflict of interest concerning this matter, Mr. Baron testified "my position is that it falls under some exceptions." *Id.* at 33:1-8. Mr. Baron was unable to answer the U.S. Trustee's follow-up question asking him to identify what "exceptions" he was talking about. Mr. Baron then sought help from his employee, Mr. Hausner, who attempted to explain why the TLM Receivable was "not a receivable," claiming that the "real number" would be revealed when he completed some kind of ill-defined "reconciliation." *Id.* at 34-35.

On March 21, 2018, the Debtor filed an incomplete monthly operating report for the month of February 2018. ECF No. 60. In this report, the TLM Receivable is no longer listed as an asset. This disappearance is referenced in a footnote that states "Differences in fixed assets and insider receivables [result?] partially from reconciling inter-company due from (to) accounts of Fite, LLC and Turning Leaf Management, Inc. Both entities are owned by by [*sic*] Tracey Baron and as such Fite, LLC is part of the consolidated group of companies managed by Mr. Baron." *Id.* at 3. It is not clear to the court what this statement means, or if Debtor's management even understands what they are trying to say. What is clear is that Mr. Baron has proven himself

utterly incapable of subordinating his own personal interests to the best interest of the bankruptcy estate. His stubborn refusal to acknowledge TLM's repayment obligation is a breach of fiduciary duty and falls squarely within the category of gross mismanagement. Moreover, if Mr. Baron had a colorable theory for why the TLM Receivable was overstated, he could have brought this issue to the attention of the U.S. Trustee and the court, and sought to either correct the Debtor's accounting in a clearly-explained manner, or settle and compromise the dispute between Debtor and TLM pursuant to Federal Rule of Bankruptcy Procedure 9019. Rather than take either of these approaches, Mr. Baron unilaterally deleted the TLM Receivable from the Debtor's balance sheet and then hid behind a vague jumble of accounting jargon tossed around by Mr. Hausner. Mr. Baron has had over twenty months' experience in various bankruptcy cases, during which he should have acquainted himself with the fiduciary duties imposed on debtors-in-possession. I have personally explained these issues to him, in court, multiple times. Yet Mr. Baron has repeatedly squandered every opportunity to chart a new course for his business entities, and there is no reason to expect he will take responsibility in the future.

Although the TLM Receivable is perhaps the most egregious example of gross mismanagement, it is not the only such occurrence. I find that the U.S. Trustee has also proven at least five other instances of gross mismanagement that justify dismissal or conversion of this case. First, Mr. Baron—without seeking authorization from the court, and apparently against the advice of counsel—transferred his personal residence to the Debtor for purposes of delaying a nonjudicial foreclosure. Hrg. Exh. 38, at 12:4 – 15:19. This once again shows disregard for applicable procedures and evidences an impermissible blurring of Debtor's and Mr. Baron's respective interests.

Second, Debtor's management is unable to fully account for the tenant security deposits it holds. Hrg. Exh. 37, at 38:19 – 39:15; Hrg. Exh. 38, at 55:17 – 56:20. In addition to poor accounting, Mr. Hausner also displayed outright disregard for bankruptcy procedure by informing the U.S. Trustee that he would not schedule tenants with contingent deposit-refund claims as creditors, because Debtor would instead waive payment of those tenants' last month rent. Hrg. Exh. 38, at 57:5-20.

Third, rather than protect Debtor's interests by continuing to collect security deposits, Mr. Hausner stated that Debtor would stop collecting deposits, seemingly because the effort to track such funds is too challenging for Debtor's management. *Id.* at 57:21-25.

Fourth, Debtor has failed to account for post-petition rents that were paid in cash. Although Debtor admits that some tenants paid in cash, there have been no identified cash deposits into Debtor's bank account. *See* Hrg. Exh. 38, at 60:7-8.

Fifth, Mr. Baron hired Mr. Hausner as Debtor's CFO without a written contract, and apparently based largely on Mr. Hausner's dedication to furthering Mr. Baron's personal financial interests. Hrg. Exh. 37, at 20:25 – 21:4; Hrg. Exh. 38, 4:17-23. Based on Mr. Baron's shortcomings in his previous chapter 11 cases, it is clear that he could benefit from the assistance of a skilled and experienced financial manager (the type of assistance he assured the court, months ago, that he was on the verge of obtaining). Based upon Mr. Hausner's unimpressive performance in this case, it appears that he was selected for his loyalty to Mr. Baron, not his ability to serve as a competent steward of estate assets.

In conclusion, I find multiple instances of mismanagement, incompetence, and failure to uphold fiduciary duties on the part of Debtor's managers. These actions constitute gross mismanagement, and justify dismissal or conversion of this case.

*Violation of Court Order*
Section 1112(b)(4)(E) provides that "failure to comply with an order of the court" constitutes cause for dismissal or conversion of a chapter 11 case. Here, there are three requirements of the Deadline Order with which Debtor has failed to comply.

First, at the original case management hearing, the court identified numerous blatant inaccuracies in the Debtor's schedules and SOFA.[7] The Deadline Order required Debtor to correct these inaccuracies by filing amended documents no later than March 13, 2018. Deadline Order ¶ 2. Debtor failed to comply with this requirement and did not ask for an extension of time. *See* Hrg. Exh. 38, at 11:4 – 12:2.

Second, the Deadline Order required Debtor to file redacted copies of its bank statements with all monthly operating reports. Deadline Order ¶ 3. Debtor has failed to comply with this requirement. *See* Jan. Monthly Op. Rpt. (ECF No. 40).

Finally, the Deadline Order required Debtor to account for all rent receipts no later than February 16, 2018. Deadline Order ¶ 1(a) and (b). As previously mentioned, Debtor has failed to account for cash payments. Hrg. Exh. 38, at 60:7-8.

*Failure to File and Report*
Section 1112(b)(4)(F) provides that a debtor's "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" constitutes cause for dismissal or conversion of a chapter 11 case. I find that Debtor has failed to fulfill at least three applicable reporting requirements, and has failed to provide any justification for such failure. First, as mentioned in the previous section, Debtor has failed to file accurate schedules and an accurate SOFA, as required by 11 U.S.C. § 521(a)(1) and Federal Rule of Bankruptcy Procedure 1007(b).

Second, Debtor has failed to report specific assets, namely past-due rents receivable and the TLM Receivable, as required by 11 U.S.C. § 521(a)(1)(B)(i) and Federal Rule of Bankruptcy Procedure 1007(b)(1)(A). *See* Amend. Sched. A/B (ECF No. 51), line 10; Hrg. Exh. 37, at 42:9-20.

Third, Debtor has failed to file a single complete monthly operating report as required by Federal Rule of Bankruptcy Procedure 2015(a), Local Bankruptcy Rule 2015-1(b), and 11 U.S.C. §§ 1107(a), 1106(a)(1), and 704(a)(8). As previously mentioned, the January report was incomplete because it failed to include a bank statement as required by previous court order. The February report was incomplete because it did not include the certification of accuracy that is

---

[7] The specific inaccuracies were briefly described at the original case management hearing, and were recited in detail at the continued case management hearing held on March 20, 2018. Such inaccuracies are too numerous to recount in this opinion, but examples include: failing to disclose Debtor's properties that were lost to foreclosure within one year of the petition date, failing to list executory contracts and unexpired leases, failure to list tenants with security deposits as creditors, failing to list unsecured creditors who were previously scheduled as creditors of the Turning Leaf Debtors, and listing unsecured creditors that have no plausible connection to Debtor's business (e.g., medical offices, payday lenders, a rent-to-own furniture store, and a pizza franchise company).

part of the form prescribed by the U.S. Trustee. Debtor has failed to file any report for the month of March. As the court previously warned Mr. Baron during the pendency of the Turning Leaf Debtors' cases, monthly operating reports are critically important. This court wholeheartedly agrees with the following holding cited by the U.S. Trustee:

> Monthly reports and the financial disclosures contained within them are the life-blood of the Chapter 11 process and are more than mere busy work. Without these reports, the [U.S. Trustee] and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize. Thus, non-compliance is not a mere technicality.

*In re Whetten*, 473 B.R. 380, 383-384 (Bankr. D. Colo. 2012) (citations and internal quotation marks omitted). Mr. Baron has been informed of this principle repeatedly, and yet his entities continue to fail in meeting their reporting obligations.

*Bad Faith Petition*
Creditor Bank of New York Melon argues that dismissal is also appropriate because the Debtor filed its chapter 11 petition in bad faith. This is not one of the enumerated examples of bad faith in § 1112(b)(4); however, that list is not exhaustive and the court may consider other factors that justify dismissal or conversion. *Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000).

The Ninth Circuit Court of Appeals has held that bad-faith filing of a petition can be cause for dismissal or conversion of a chapter 11 case. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). The test to determine if a petition is filed in good faith asks "whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Id.*

Here, the November Transfers and Mr. Baron's subsequent refusal to acknowledge the validity of the TLM Receivable leave me with little doubt that the petition was filed in bad faith. The hallmark of Mr. Baron's business model is that he acquires over-encumbered properties and attempts to strip off unsecured liens in order to create long-term value for himself. As such, the real property assets owned by his entities typically have little or no equity. Yet after several months in chapter 11, the Turning Leaf Debtors did have a material unencumbered asset: over $100,000 in cash, which accumulated in part because the Turning Leaf Debtors were collecting rents but not paying secured creditors, thanks to the protection of the automatic stay. Rather than using this cash to improve the properties, hire experienced bankruptcy counsel, or pay creditors, Mr. Baron quickly transferred the cash to TLM and used it for other purposes (purposes which will likely never be fully understood, given his track record of poor financial record keeping).

The November Transfers alone are not *per se* bad faith. If Mr. Baron reentered bankruptcy with forthright financial disclosures and a viable plan to reorganize, this case could have ended differently. But that is not what happened. Once the U.S. Trustee identified the November Transfers and the resulting TLM Receivable, Mr. Baron responded by denying that there was a problem and by fighting to protect his own interests at the expense of the bankruptcy estate. Mr. Baron has failed to provide information to his counsel that would allow the filing of accurate bankruptcy documents, thus there is no reasonable basis upon which to conclude that Mr. Baron has any serious interest in achieving a speedy and efficient reorganization.

I find that Debtor's petition was filed in bad faith, and this constitutes cause for dismissal or conversion under § 1112(b).

**Relief Sought by the U.S. Trustee**
Having found that cause exists, I must next consider whether dismissal or conversion is in the best interests of the estate. This is relatively easy because there are few, if any, material assets that would be available for unsecured creditors if the case converted to chapter 7. Debtor's primary assets consist of overencumbered real estate, and secured creditors are best served by enforcing their rights in a non-bankruptcy forum. Accordingly, I will dismiss the case.

The real question confronting the court is whether to impose a bar on future bankruptcy petitions by entities owned or controlled by Mr. Baron.[8] I have presided over five cases that involve entities controlled by Mr. Baron. In these cases, few things have worked as they should. Financial information is chronically inaccurate and late (if it is produced at all), debtors acquire and dispose of property without disclosure or authorization, and not one debtor has achieved confirmation of a chapter 11 plan. Mr. Baron's consistent response to these failures is to blame others: his lawyers, his staff, the U.S. Trustee, software developers, tenants, and creditors. Mr. Baron appears to cast blame on everyone but himself, even though bankruptcy law is clear that he is the party responsible for managing the estate. I have made this precise observation to Mr. Baron before, but if anything, his management of this Debtor is worse than in any of his previous cases.

Based on the extensive record before the court, I find that Mr. Baron is incapable of complying with the requirements imposed on bankruptcy debtors, and therefore an injunction against future filing is warranted. I do not, however, agree with the U.S. Trustee's request for a permanent injunction. Based on Mr. Baron's long pattern of hindering and delaying secured creditors, lienholders should have the opportunity to exercise their state-law remedies without additional delay occasioned by bankruptcy filings. Accordingly, I find that a two-year bar is adequate for purposes of allowing creditors to assert their rights without undue interference.

As for the coverage of the injunction, I generally adopt the scope proposed by the U.S. Trustee, with slight modification—the injunction will apply to all entities (other than publicly traded companies in which Mr. Baron has some nominal interest): (1) in which Mr. Baron has a direct or indirect ownership interest, (2) which Mr. Baron manages or controls, or (3) for which Mr. Baron serves as a director, officer, manager, or key employee.

**Conclusion**
Bankruptcy is powerful tool, which can only function properly if parties are honest and forthright with each other and the court. In return for the benefits conferred upon debtors, the Bankruptcy Code and Rules impose reporting duties that are designed to facilitate adjustment of the debtor-creditor relationship by providing salient information to interested parties. *See Cossio v. Cate (In re Cossio)*, 163 B.R. 150, 156 ("Interested parties should be entitled to rely on the information provided in the course of the bankruptcy case."). A "debtor may not accept the benefits

---

[8] The U.S. Trustee requested such a bar in the Motion, however it was variably referred to as a "bar to refiling" and "dismissal with prejudice." These two concepts are not synonymous. *See* 3 Collier ¶¶ 349.02[2] and [3]. As I explained at the April 23 hearing, based on the content of the U.S. Trustee's arguments, I have construed the Motion as seeking dismissal with a permanent bar to refiling.

conferred by the code and reject its burdens." *In re Haverland*, 150 B.R. 768, 772 (Bankr. S.D. Cal. 1993). Yet this is exactly what Mr. Baron seeks to do: he wants to unlock value in his entities' assets, but he refuses to deal honestly with creditors. This must stop. At this point, after the fifth petition involving one of his entities, Mr. Baron has had so many bites at the proverbial apple that there is nothing left but the core. Because of Mr. Baron's mismanagement of the estate and failure to fulfil the Debtor's duties in bankruptcy, I hold that dismissal of this case with a two-year bar to refiling is justified. Counsel for the U.S. Trustee should upload an order granting the Motion as described above within seven days of the date of this letter.

Very truly yours,

Trish M. Brown